(October 19, 1989)

■ The People of the State of New York, Appellant, v Albert Fowler, Respondent.—Order of the Supreme Court, New York County (Stephen Crane, J.), dated August 25, 1987, which set aside the court's own verdict finding defendant guilty of criminal sale of a controlled substance in the third degree, is unanimously reversed, on the law, the verdict reinstated and the matter remanded for sentencing.

Undercover Police Officer Nelson Vargas testified that as he approached the defendant on the lower east side, defendant asked him "what do you need?" When the officer responded "who's got the crack?", the defendant answered "right this way, my man".

The officer and the defendant then walked 20 to 25 feet toward an individual later identified as one Carl Smith. When they reached Smith, the defendant stated "my man wants some crack. Hook him up." Smith asked Police Officer Vargas how much he wanted, whereupon the officer replied "let me get two". Smith handed Police Officer Vargas two clear vials containing cocaine in exchange for $20.

According to the officer, the defendant was standing between Smith and himself during the transaction and was looking up and down the street from left to right while the transaction was taking place. After the sale, all three individuals walked back to the spot where Police Officer Vargas first encountered the defendant, and parted company. The officer radioed his backup team, who arrested the defendant and Smith shortly after.

Criminal Term credited the testimony of Officer Vargas and

found the defendant guilty of third degree criminal sale of a controlled substance. Thereafter, upon defendant's motion to set aside the verdict pursuant to CPL 330.30 (1), the court found that the evidence was insufficient as a matter of law to establish that defendant was not acting solely as the agent of Officer Vargas, finding that this conclusion was constrained by the decision in *People v Matos* (123 AD2d 330) (but that the facts absent the application of the considerations in *Matos* warranted a verdict of guilty).

Initially, we note that the defendant's contention that the court's decision was procedurally improper, and that an order setting aside the verdict on the grounds of legal insufficiency immediately after a bench trial is inappropriate and tantamount to an acquittal, is without merit. CPL 320.20 authorizes a court during a nonjury trial to follow the procedures applicable to a jury trial whenever appropriate. While the court after a nonjury trial may not set aside its own guilty verdict on factual grounds, it may set the verdict aside "if based upon insufficient evidence or evidence which as a matter of law was inadequate to prove guilt beyond a reasonable doubt" *(People v Carter,* 63 NY2d 530, 537).

Further, our review of Criminal Term's decision to set aside its own guilty verdict solely on legal grounds is not foreclosed by double jeopardy considerations since "there is available a determination of guilt which without more may be reinstated in the event of a reversal and remand" *(People v Brown,* 40 NY2d 381, 391, *cert denied* 433 US 913).

Since Criminal Term viewed the evidence as sufficient to support a guilty verdict but for the application of *People v Matos (supra),* its setting aside the verdict on that ground alone was not tantamount to an acquittal and is reviewable by us on the merits.

In *People v Matos (supra),* the undercover officer approached the defendant, who was standing on the sidewalk in Brooklyn, and asked for two $10 packets of heroin. The defendant replied that he was only selling cocaine. The undercover officer said he only wanted heroin. The defendant told the undercover officer to give him the money and that he would take the officer to a place where he could get heroin. The officer handed the defendant $20 and both men walked across the street to one Vito Acevedo. The defendant told Acevedo that the officer wanted two "dimes" and gave Acevedo $20. Acevedo then handed the undercover officer two glassine envelopes containing heroin.

The Second Department reversed the defendant's conviction, finding that the People did not disprove the defense of agency beyond a reasonable doubt.

While we are not entirely persuaded that the facts in *Matos (supra)* make out an agency defense as a matter of law, the facts there and in the case at bar are very different in any event. In *Matos,* the officer approached defendant and asked for drugs. Here, the defendant made the initial inquiry, asking the officer "what do you need?" In *Matos,* the verbal exchange and the fact that defendant gave Acevedo the officer's money plausibly suggested that defendant sold only cocaine while Acevedo sold only heroin and that there was no common interest between them. In this case, however, defendant, after first broaching the subject of drugs, escorted the officer to the seller, stood between them, looked up and down the street for police, and instructed the seller to "hook up" the officer. Thus, "defendant's over-all manner and actions substantiate that this was a well-choreographed, two-person drug operation, conducted by two street-wise entrepreneurs" *(People v Windley,* 78 AD2d 55, 58). Therefore, Criminal Term's decision that defendant was the buyer's agent as a matter of law was erroneous. Concur—Murphy, P. J., Sullivan, Asch, Rosenberger and Wallach, JJ.